**UNITED STATES of America, Appellee,**

v.

**George McGREGOR, Defendant–Appellant.**

**No. 321, Docket 93–1255.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1993.

Decided Dec. 15, 1993.

John P. Tavana, Asst. U.S. Atty. for the D. of Vt. (Charles A. Caruso, U.S. Atty. for the D. of Vt.), Burlington, VT, for appellee.

Mark A. Kaplan, Burlington, VT (Jarvis & Kaplan, of counsel), for defendant-appellant.

Before: MAHONEY and WALKER, Circuit Judges, and METZNER, Senior District Judge.*

METZNER, Senior District Judge:

Defendant-appellant George McGregor appeals from an order entered in the United States District Court for the District of Vermont (Parker, C.J.) on July 24, 1992, denying a motion to dismiss the indictment for police misconduct. McGregor entered into a plea agreement expressly reserving the right to challenge the denial of his motion. McGregor also appeals from the sentence imposed upon him pursuant to his plea of guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

On appeal, McGregor argues that the district court's findings of fact following a hearing on his motion to dismiss were clearly erroneous. He also challenges his sentence on the grounds that: (1) the quantity of drugs used to determine his base offense level was not established by a preponderance of the evidence; (2) the district court did not grant a downward departure due to extraordinary family circumstances; and (3) the two-level enhancement for an aggravated role in the offense was improper. We find that the district court properly denied McGregor's motion to dismiss, that the quantity of drugs used in determining the base offense level was established by a preponderance of the evidence, and that district court's decision not to grant a downward departure is not appealable. We also conclude that no enhancement for an aggravated role in the offense should have been assessed. Accordingly, we affirm McGregor's conviction, vacate the sentence, and remand for resentencing.

A. *The Motion to Dismiss*

█ On December 27, 1990, a confidential informant ("CI") who was working with the

Drug Enforcement Administration negotiated with Ellen McGregor, wife of defendant-appellant George McGregor, to purchase cocaine. Ellen McGregor told the CI that her husband had a supply of cocaine in the house and that she would remove part of it and sell it to the CI. It appears that this type of activity by Mrs. McGregor had been going on for some time without her husband's knowledge. Later that day the CI went to the McGregor residence in Essex Center, Vermont to make the purchase. When the CI arrived, Ellen McGregor told him she would not be able to sell the cocaine because there was no cutting agent available to replace the cocaine that she intended to take from her husband's supply. The CI told Ellen McGregor that he would return later with some cutting agent and make the purchase. Prior to his departure, Ellen McGregor gave the CI 0.22 grams of cocaine as a sample.

The CI returned to the McGregor residence on January 10, 1991. There, Ellen McGregor skimmed one-half ounce of cocaine (14.6 grams) from a package which George McGregor had given her for delivery to another customer. The CI paid Ellen McGregor $350.00 for the cocaine and agreed to return later to give her an additional $150.00. Subsequently on that day, Ellen McGregor delivered a package of cocaine to each of two customers of Mr. McGregor who came to the McGregor home for their purchases.

On the following day the Vermont Drug Task Force agents obtained a search warrant for the McGregor residence. At the residence, the agents found George and Ellen McGregor and their two children. During the search, the agents seized a quantity of marijuana; marijuana paraphernalia; over two ounces of inositol, a cutting agent commonly used by cocaine traffickers; two small scales; cocaine paraphernalia; and $2,100.00 in currency.

Though neither George nor Ellen McGregor were arrested at the time of the search, both remained at the residence, and both made incriminating admissions to the agents.

---

* Honorable Charles M. Metzner, Senior United States District Judge for the Southern District of New York, sitting by designation.

On January 23, 1992, defendant-appellant was indicted on one count of possession with intent to distribute cocaine and one count of conspiracy to distribute cocaine. Both counts related to the delivery by Ellen McGregor of two separate packages of cocaine at the instruction of her husband on January 10, 1991. The defendant's wife was charged in the same indictment with two counts of distributing cocaine, one count referring to December 27, 1990, and the second to January 10, 1991, and one count of conspiracy to distribute cocaine.

George and Ellen McGregor jointly filed a motion to suppress the statements they made at the time their residence was searched and a motion to dismiss the indictment on the grounds of police misconduct. In their motion, the McGregors alleged that: (1) they "were subjected to a warrantless arrest inside their home;" (2) they were "held incommunicado for a period of time until they gave statements to the police;" (3) they were told that "they would be sent to jail if they spoke to counsel;" (4) "they had no choice but to give statements;" and (5) "they were informed that if they gave police information about drug-trafficking activities, they would not get into trouble."

On April 28 and April 30, 1992, the district court held hearings on the motion to suppress and the motion to dismiss. The denial of the motion to suppress is not attacked on this appeal. Four law enforcement agents testified for the government, and three witnesses testified for the McGregors: Ellen McGregor, Nancy McGregor (George McGregor's mother), and Sadie Dodge, a friend of Ellen McGregor's daughter. Summing up this testimony, we find that the government agents denied wrongdoing while the testimony offered by the defendants supported their allegations.

After the hearing, and the submission by both sides of proposed findings of fact with supporting memoranda, the district court issued its findings on July 24, 1992. The court expressly rejected the relevant factual allegations made by the McGregors in support of their motions to dismiss, stating, "[t]his court heard no credible evidence indicating that the agents treated the McGregors improperly during their presence in their residence."

McGregor argues that the district court should have credited the testimony offered by the witnesses that he called at the hearing, and points to testimony in the record which contradicts the testimony of Agent Cole, which was relied on by the district court.

 We may not overrule the district court's factual findings unless they are clearly erroneous. *See Pullman–Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). The trial court is in a unique position to evaluate the credibility of witnesses, *United States v. Davis*, 967 F.2d 84, 86 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 356, 121 L.Ed.2d 270 (1992), and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. $10,000 in U.S. Currency*, 780 F.2d 213, 220 (2d Cir.1986) (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949)).

The district court's determination that the agents conducted themselves properly during their presence in the McGregor residence was not clearly erroneous. The testimony of Agent Cole and the other agents amply supports the district court's finding.

## B. *The Sentence*

On August 17, 1992, McGregor entered a plea of guilty to Count III of the Indictment, possession of cocaine with intent to distribute, pursuant to a plea agreement.

The final Presentence Investigation Report ("PSI") was prepared on December 10, 1992. The PSI recommended a base offense level of 32, reflecting offense conduct and relevant conduct involving five to fifteen kilograms of cocaine. The 12.54 kilograms of cocaine attributed to McGregor was derived from calculations based on admissions by the defendant and an interview by the probation officer of McGregor's supplier, David Viens. From those sources, the PSI determined that McGregor had been selling four ounces of cocaine per week over a period of seventy-

eight weeks, and that the defendant had made at least four trips to Florida for David Viens, returning with at least one kilogram per trip.

The PSI also noted that there was information from another area drug dealer, Lawrence Cruz, that he was receiving one-half pound quantities of cocaine from McGregor during 1990. Since at the time it was not possible to quantify accurately the amounts involved, this information was not specifically included in the relevant conduct determination, but rather was referenced to support generally the five to fifteen kilogram range.

The PSI also recommended a two level downward adjustment of the base offense level for acceptance of responsibility, and a two level increase for an aggravated role in the offense, because the defendant had used his wife to deliver two packages of cocaine to his customers on January 10, 1991. The final recommendation was a total offense level of 32, and a criminal history category I, with a resulting guideline range of imprisonment of 121 to 151 months.

McGregor objected to a number of the recommendations of the PSI. First, he disagreed with the five to fifteen kilogram drug quantity range, and argued that he should be placed in the three and a half to five kilogram range. Second, he objected to the inclusion of statements made by Lawrence Cruz. Third, he contended that the aggravated role recommendation was improper because he never informed his wife that the packages that he asked her to deliver in exchange for money contained cocaine. Finally, McGregor raised with the probation officer various grounds for downward departure, including extraordinary family circumstances.

■ A sentencing hearing was held on March 17, 1993. At that hearing, Vermont Drug Task Force Agent Charles Cole testified about George McGregor's statements at the time of the search on January 11, 1991, describing the extent of his drug trafficking with David Viens. Cole testified that on January 11, 1991, McGregor admitted he was receiving weekly supplies of cocaine from David Viens for distribution to his customers, ranging from a usual quantity of four ounces

to an occasional eight ounces, for approximately one year. McGregor further admitted to Cole that he had made three or four trips to Florida on behalf of David Viens to pick up multi-kilogram quantities of cocaine and bring it back to Vermont. McGregor estimated that on each trip he would pick up two to three kilograms of cocaine from Steven Viens, David Viens' brother. He based his estimate of the quantity of cocaine he was carrying on the weight of the suitcase he picked up as well as the payment of four ounces of cocaine, worth approximately $6,000.00, he received for each trip.

Task Force Agent Roger Marcoux then testified regarding his interview with David Viens and Steven Viens, during which they described McGregor's role in their drug trafficking. This testimony corroborates Cole's story.

McGregor did not offer evidence on the issue of the quantity of cocaine attributable as relevant conduct, but his counsel did cross-examine both Cole and Marcoux.

At the conclusion of the evidence, the district court found that relevant conduct in excess of five kilograms had been established by a preponderance of the evidence. The evidence referred to above amply supports this finding.

The district court went on to find that a two level enhancement for an aggravated role in the offense was appropriate because McGregor acted as a supervisor when he had his wife deliver packages of cocaine to two of his customers. The court then adjusted McGregor's offense level downward by three points for acceptance of responsibility, which was greater than the two-level adjustment suggested in the PSI.

Based on offense level 31 and criminal history category I, the Court determined the guideline range of imprisonment to be 108 to 135 months. Evidence and arguments were then presented on the appropriateness of a downward departure on several grounds, including extraordinary family circumstances. The Court denied the defendant's request for downward departure and sentenced him to 108 months.

■ McGregor claims that the district court erred in not granting him a downward departure due to extraordinary circumstances pursuant to U.S.S.G. § 5K2.0. Absent a showing that a sentencing court was under the mistaken belief that it lacked authority to depart downward, the exercise of its discretion not to depart from the applicable Guideline range is not appealable. *United States v. Alaga*, 995 F.2d 380, 382 (2d Cir.1993) (quoting *United States v. Colon*, 884 F.2d 1550, 1552 (2d Cir.), *cert. denied*, 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989)), *petition for cert. filed*, No. 93–6008 (Sept. 13, 1993). There is no such showing here.

■ Finally, we come to McGregor's contention that the district court's two-level enhancement for an aggravated role in the offense pursuant to U.S.S.G. § 3B1.1(c) was improper. The district court based this enhancement on the fact that McGregor had directed his wife to deliver two packages of cocaine on January 10, 1991. The district court stated:

> regardless of the defendant's suggestion that he did not inform his wife, Ellen, about the contents of the bags that he directed her to deliver to customers back in January, that that really has no relevance to the question of his role as a supervisor. He directed her to act on his behalf in the distribution of cocaine. Accordingly, the plus two adjustment for [a] supervisor's role is called for.

McGregor challenges the district court's determination on the grounds that McGregor did not direct his wife to deliver any packages containing cocaine, but merely "asked" her to hand over the packages to two individuals if they stopped by that night; that he was unaware that his wife knew that he was selling cocaine; and that he never intended to recruit her as a part of any drug conspiracy. McGregor contends that a defendant who receives an aggravated role enhancement must have had an acknowledged agreement to commit crimes with the person against whom his offense is measured.

The Government argues that U.S.S.G. § 3B1.1 includes an aggravated role adjustment primarily because of concerns about relative responsibility, that both Ellen and George McGregor were criminally responsible for the delivery of cocaine to George McGregor's customers on January 10, 1991, and that because George McGregor was significantly more responsible, his sentence was properly enhanced.

■■ We recognize that the sentencing court's findings of fact as to a defendant's role in the offense will be overturned only if they are clearly erroneous. *United States v. Farah*, 991 F.2d 1065, 1068 (2d Cir.1993). The conclusion that one is a supervisor "involves a legal interpretation of the Guidelines and is reviewed *de novo.*" *See United States v. Spencer*, 4 F.3d 115, 120 (2d Cir.1993). *See also United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir.), *cert. denied*, 498 U.S. 870, 111 S.Ct. 190, 112 L.Ed.2d 152 (1990). Under this standard, we hold that the district court's findings in this case do not support an enhancement for an aggravated role as a matter of law.

Section 3B1.1 of the U.S.S.G. reads as follows:

§ 3B1.1. Aggravating Role

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

The Guidelines do not clearly define the term "supervisor" and the courts must make this determination. *United States v. Skinner*, 986 F.2d 1091, 1096–97 (7th Cir.1993) (citations omitted).

The district court based McGregor's enhancement on his role as the supervisor of his wife. George McGregor was engaged in a continuous operation of buying and resell-

ing at least four ounces of cocaine every week for a period of at least one year. He was a dealer in drugs. Over the entire course of his activity, he involved his wife only on this one occasion. McGregor asked her to hand over two separate packages to two men who would appear at their residence on January 10, 1991, and to accept whatever money they tendered. According to McGregor, he never told his wife what was in the packages, nor did he believe that she knew that they contained cocaine.

We know that Mrs. McGregor was aware of the contents of the packages. That fact makes her a participant in the crime. U.S.S.G. § 3B1.1, comment. (n.1). McGregor's knowledge of whether his wife was aware of the contents is immaterial. In the usual case, obtaining the services of a participant would make one a supervisor subject to an enhanced sentence. *United States v. Jacobo,* 934 F.2d 411 (2d Cir.1991).

However, we are dealing with an atypical case. If McGregor had been charged with drug activity on any other day during the preceding year, he would have received a sentence without enhancement. McGregor's sentence of 108 months embraces not only the charge in the indictment, but all his prior activity and the enhancement. McGregor does not expect to be at home when the two buyers come for the drugs that day. He asks his wife to give them the packages. This request against the whole background of the case does not make McGregor an "organizer, leader, manager, or supervisor," so as to warrant the imposition of the two-level increase provided by section 3B1.1(c).

The dissent contends that the facts in *United States v. Jacobo,* 934 F.2d 411, are indistinguishable from the present case. However, in *Jacobo,* the defendant who was involved in a single multi-party drug transaction had hired the services of an underling to help carry out the transaction. *Jacobo* presents a picture of supervision that is different from this case. In this case, the defendant simply asked his wife to hand over packages to some men who might arrive at their home while he was away. In other cases in which a familial supervisor was found to exist, the level of supervision, participation, and man-

agement was more extensive and extended for a longer period of time than in this case. *See, e.g., United States v. Collar,* 904 F.2d 441, 442 (8th Cir.1990) (defendant's wife drove the getaway vehicle after six bank robberies); *United States v. Sheffer,* 896 F.2d 842, 846 (4th Cir.) (defendant was leader and organizer of the family drug business, instrumental in helping family members enter the business), *cert. denied,* 498 U.S. 968, 111 S.Ct. 432, 112 L.Ed.2d 416 (1990). The animating purpose of the role enhancement, as stated in the Background to the Commentary of section 3B1.1, is to increase punishment for those within a criminal organization who have a greater "relative responsibility." One isolated instance of a drug dealer husband asking his wife to assist him in a drug transaction is not the type of situation that section 3B1.1 was designed to reach.

We do not find the lower court's findings of fact clearly erroneous; on the contrary, we accept them. Rather, we merely hold that these facts, taken as true, do not legally support enhancement under section 3B1.1.

Accordingly, we affirm the conviction, vacate the sentence, and remand for resentencing in accordance with this opinion.

MAHONEY, Circuit Judge, concurring in part and dissenting in part:

I am otherwise in agreement with my colleagues, but respectfully dissent as to the majority's reversal of the two-level enhancement of McGregor's sentence pursuant to USSG § 3B1.1(c). In my view, this case cannot be meaningfully distinguished from *United States v. Jacobo,* 934 F.2d 411 (2d Cir.1991). In *Jacobo,* we ruled that because a defendant "had obtained the cocaine and had hired [another defendant] to carry it for him, the court's finding that [the hiring defendant] played a managerial role in the enterprise was not clearly erroneous." *Id.* at 418; *see also id.* at 414 (hiring occurred just before drug transaction was consummated).

*Jacobo* leaves little room to preclude application of the § 3B1.1(c) enhancement because the "supervised" or "managed" participant was only utilized in a single transaction; nor should the existence of other similar

transactions in which that participant was *not* involved affect the analysis.

I would accordingly affirm the judgment and sentence of the district court.